# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

**In Re:**

HANS P. JACOBS and MARY L. JACOBS,

**Debtors.**

**Bankruptcy Case No. 04-42387**

_____

JESS VAN HALL, d.b.a. FARMERS EXCHANGE,

**Plaintiff,**

**vs.**

SAM HOPKINS, Trustee,

**Defendant.**

**Adv. Proceeding No. 05-8078**

_____

## MEMORANDUM OF DECISION

_____

### Background

Plaintiff Jess Van Hall, dba Farmers Exchange, brought this adversary proceeding to determine the validity of a lien he claims in the proceeds

MEMORANDUM OF DECISION - 1

from Defendant's sale of Debtors' car.  The crux of the dispute hinges upon whether an application for the certificate of title, together with other documents, constitutes a valid "security agreement" under state law.  After reviewing the facts and applicable law, the Court concludes Plaintiff held an enforceable security interest in the vehicle, and now in the proceeds.  This Memorandum constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052.

### Facts[1]

Debtors Hans and Mary Jacobs filed a Chapter 7 petition on November 11, 2004.  At that time, Debtors owned a 2001 Ford Escape.  In their schedules, they claimed an exemption of $6,000 in the vehicle under Idaho Code § 11-605(3) and disclosed that Farmer's Exchange held a security interest in the vehicle.  Bankr. Case No. 04-42387, Scheds. C, D, Docket No. 1.[2]

Debtors had purchased the vehicle from Plaintiff on October 25, 2003, for $14,840.  Ex. A, Docket No. 7.  The invoice documenting the sale

---

[1] Plaintiff and Defendant R. Sam Hopkins, the Chapter 7 Trustee, agreed to submit the matter to the Court via stipulated facts, electing to forego a trial.  Docket No. 7.

[2] Pursuant to Fed. R. Evid. 201(c) and Fed. R. Evid. 801, the Court takes judicial notice of the contents of its file, and considers the statements made in Debtors' schedules as admissions.  *In re Moore*, 01.4 I.B.C.R. 147, 149 n.7 (Bankr. D. Idaho 2001) (treating schedules as admissions).  The Court also notes that Plaintiff did not file a proof of claim in Debtors' bankruptcy case.

MEMORANDUM OF DECISION - 2

identifies the vehicle and sets forth the purchase price. On the face of this document, the transaction appears to be a cash sale. There is no language in the invoice indicating Debtors intended to grant a security interest in favor of Plaintiff, or that Plaintiff was extending credit to Debtors for any portion of the purchase price.

Contemporaneously with the sale, Debtors and Plaintiff completed a "Report of Sale and Application for Certificate of Title" (the "Application") on the form required by the Idaho Department of Transportation. Ex. B, Docket No. 7. The Application identifies the vehicle, lists "Jess Van Hall DBA Farmers Exchange" as the lienholder, and contains Debtors' signatures. The signature block above Debtors' names contains a sworn declaration that the information contained on the form is true and correct. Consistent with the Application, the Certificate of Title thereafter issued by the Department lists Plaintiff as the first lienholder. Ex. D, Docket No. 7.

Plaintiff and Debtors continued their business relationship after the purchase of the Ford. On May 16, 2004, Debtors signed Invoice number 364258 evidencing another transaction between the parties with the following terms:

| | |
|---|---|
| Balance Due 2001 Escape | $14,840.00 |
| Payment | $10,000.00 |
| Balance due at the interest rate of 6% | $ 4,840.00 |
| Due on or before 1-1-05 | |

MEMORANDUM OF DECISION - 3

Ex. C, Docket No. 7. Debtors signed this invoice, and "borrower" was noted next to their signatures. Ex. C, Docket No. 7.

Debtors borrowed an additional $5,179.26 from Plaintiff on June 15, 2004. They again signed an invoice, number 264273, indicating:

| | |
|---|---|
| Loan in the amount of $5,174.26 | $5,179.26 |
| to be added to Invoice #364258 | $4,840.00 |
| Total amount due at 6% interest | |
| on or before January 1, 2005 | $10,019.26 |

Ex. E, Docket No. 7. Before this loan came due, Debtors filed bankruptcy, and Defendant was appointed to serve as the trustee of their bankruptcy estate.

After reviewing the above information, Defendant took the position that no enforceable security agreement had been executed by Debtors, which rendered Plaintiff's claimed lien avoidable. Defendant demanded that Plaintiff sign over the vehicle's title in order to avoid a lawsuit. Ex. G, Docket No. 7. Plaintiff did so, and the Court thereafter authorized the sale of the vehicle over Plaintiffs' objection. Stipulation, ¶ 9, Docket No. 7. At auction, Defendant sold the Ford for $9,300.00. Stipulation, ¶ 10, Docket No. 7.

Plaintiff contends that the Application and other documents evidencing his dealings with Debtors constitute a security agreement, and that his security interest was perfected by notation on the title. Defendant believes otherwise, arguing that the Application was insufficient to satisfy the UCC's

MEMORANDUM OF DECISION - 4

requirements for a security agreement, and that without one, Plaintiff had no lien to perfect. Defendant also asserts that by signing over the title, Plaintiff should be estopped from claiming a lien.

Plaintiff's complaint in this adversary proceeding, filed pursuant to Fed. R. Bankr. P. 7001(2), seeks entry of a declaratory judgment finding his lien is enforceable against the vehicle's sale proceeds.

## Disposition

### A. Plaintiff Held an Enforceable Security Interest.

The nature and extent of security interests are determined by state law. *Philip Morris Capital Corp. v. Bering Trader, Inc.* (*In re Bering Trader, Inc.*) 944 F.2d 500, 502 (9th Cir. 1991). With respect to motor vehicles, the attachment of a security interest is governed by Article Nine of the Uniform Commercial Code, *Simplot v. Owens*, 805 P.2d 449, 450 (Idaho 1990), while perfection of that interest is governed by the Idaho Vehicle Titles Act, Idaho Code §§ 49-501–530, unless the vehicles are held by the debtor as inventory for sale, *Simplot v. Owens*, 805 P.2d 477, 480 (Idaho Ct. App. 1990) (citing Idaho Code § 49-512). No evidence was offered indicating Plaintiff held the Ford for resale or that Debtors were used car dealers.

Under Article Nine, a security interest attaches to collateral and

MEMORANDUM OF DECISION - 5

becomes enforceable against the debtor and third parties when "(1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and . . . (A) the debtor has authenticated a security agreement that provides a description of the collateral . . . ." Idaho Code § 28-9-203.[3]

Under the UCC, "authentication" means either "to sign" or to "otherwise adopt a symbol, or encrypt or similarly process a record . . . ." Idaho Code § 28-9-102(7). The official comments explain that the term "authenticate" generally replaces the language in Former Article Nine requiring debtors to "sign" a written security agreement so as to include authentication of all records, including intangible computer generated records and not just tangible writings, within the concept of a security agreement. Official Cmt. 9(b), Idaho Code § 28-9-102. But it is clear that some form of writing or record is required in order to satisfy the UCC statute of frauds. Official Cmt. 2, Idaho Code § 28-9-203 (explaining that "enforceability requires the debtor's security agreement and compliance with an evidentiary requirement in the nature of a statute of frauds.").

---

[3] The creation of the security agreement in this case is governed by Revised Article Nine, which became effective July 1, 2002. *See In re Wiersma*, 283 B.R. 294, 299 (Bankr. D. Idaho 2002) (explaining the effective dates and application of Revised Article Nine). The parties do not dispute that the first two requirements of § 28-9-203 had been met.

MEMORANDUM OF DECISION - 6

A "security agreement" is defined as "an agreement that creates or provides for a security interest." Idaho Code § 28-9-102(73). *Simplot* explains

> no magic words are necessary to create a security interest and . . . the agreement itself need not even contain the term 'security interest.' This is in keeping with the policy of the code that form should not prevail over substance and that, whenever possible, effect should be given to the parties' intent.

*Simplot*, 805 P.2d at 452 (quoting *Idaho Bank & Trust Co. v. Cargill*, 665 P.2d 1093, 1097 (Idaho Ct. App. 1983)). Even with the revisions, the liberal policy of the UCC was not changed, and neither the definition of the term "security agreement" nor the authentication requirement:

> rejects the deeply rooted doctrine that a bill of sale, although absolute in form, may be shown in fact to have been given as security. Under this Article, as under prior law, a debtor may show by parol evidence that a transfer purporting to be absolute was in fact for security.

Official Cmt. 3, Idaho Code § 28-9-203.

Here, the question is whether the Application constituted a security agreement as to the Ford. Although the *Simplot* case is distinguishable from this case on its facts, it is important because it explains Idaho's liberal interpretation of Article Nine, and it cites other cases that are helpful for the present analysis. In *Simplot*, the debtor signed two promissory notes containing the words

MEMORANDUM OF DECISION - 7

"SECURITY: 1956 GMC bus." *Simplot*, 805 P.2d at 449. A certificate of title was then issued. The Idaho Supreme Court held that the language in the promissory notes, together with the endorsement and delivery of the certificate of title, satisfied Idaho Code § 28-9-203 and constituted an enforceable security interest. *Id.* at 450–51. The court required no special words to create a security interest. *Id.* at 452.

In *Simplot*, the creditor did not rely upon the application for the certificate of title as evidence of a security agreement, pointing instead to the promissory notes. In this case, the invoices describe the essential terms of the parties' deal and do not contain language evidencing the Debtors' intent to create a security interest. Yet, as the *Simplot* case illustrates, the Idaho courts take a liberal view of the elements required to create an enforceable security agreement. In *Simplot*, all that was required to evidence the security interest for purposes of the UCC was the simple notation in the promissory notes that a particular bus was "security."

*Simplot* cited *Nolden v. Plant Reclamation* (*In re Amex-Protein*), 504 F.2d 1056, 1059–60 (9th Cir. 1974), which in turn identified persuasive case law from other courts and discussed California's UCC provisions. *See Simplot*, 805 P.2d at 451. Of particular interest here, *Amex-Protein* discussed several cases

MEMORANDUM OF DECISION - 8

in which two or more documents, including a UCC-1 financing statement, were construed together by the court to find the requisite elements of a "security agreement." *Amex-Protein*, 504 F.2d at 1059.  In one of these cases, a debtor executed a promissory note that made specific reference to a certain UCC-1 financing statement.  This led the court to conclude that "since a security agreement could serve as a financing statement, there was no sound reason why the converse should not be true." *Amex-Protein*, 504 F.2d at 1059 (citing *Evans v. Everett*, 183 S.E.2d 109, 113 (N.C. 1971).  The most important requirement, the *Amex* court noted, is that there be language in the instrument "which 'leads to the logical conclusion that it was the intention of the parties that a security interest be created.'" *Id.* (quoting *In re Nottingham*, 6 U.C.C.Rep 1197, 1199 (U.S.C.D.Tenn. 1969)).[4]

Other courts that have addressed the precise question before this Court have arrived at opposite conclusions regarding whether an application for a

---

[4] *Amex-Protein* also criticizes *Shelton v. Erwin*, 472 F.2d 1118 (8th Cir. 1973), a case cited by Defendant here, noting that *Shelton* suffered from the same "infirmities" as did the restrictive ruling in *American Card Co. v. H.M.H. Co.*, 196 A.2d 150 (R.I. 1963). *Amex-Protein*, 504 F.2d at 1059–60.  *Shelton* held that a bill of sale, together with a title application, despite setting forth the intention of the parties, did not create a security agreement, while *American Card Co.* held a financing statement that did not contain a "grant" of a security interest could not also serve as a security agreement.  *See Amex-Protein*, 504 F.2d. at 1059–60.  Because the Idaho courts found *Amex-Protein's* liberal interpretation persuasive, this Court should also in interpreting the Idaho UCC.

MEMORANDUM OF DECISION - 9

certificate of title, standing alone, was sufficient to create a security agreement. *See Roan v. Murray*, 556 N.W.2d 893, 895 (Mich. Ct. App. 1996) *and Kreiger v. Hartig*, 527 P.2d 483 (Wash. Ct. App. 1974) (both holding that an application for a certificate of title constituted a security agreement) *and compare White v. Household Fin. Corp.*, 302 N.E.2d 828 (1973) (reaching the opposite conclusion). In deciding that a title application constituted a valid security agreement, the *Roan* court looked to the UCC's definition of "Agreement" in § 1-201(3), concluded that all of the requisite elements for a security agreement were present in the application, and reasoned that the court's interpretation of the UCC was consistent with its general policy "to avoid technical formalities." *Roan*, 556 N.W.2d at 895. Similarly, the court in *Kreiger* found that the debtors' oral agreement to grant a security interest, when coupled with the information on the application for certificate of title, was sufficient to create a security agreement. *Kreiger*, 527 P.2d at 902–3.

       For the reasons discussed in *Kreiger* and *Roan* and similar cases, and consistent with the liberal policy of the UCC articulated in *Simplot* and the cases cited therein, the Court is persuaded here to conclude that Debtors granted Plaintiff an enforceable security interest in the Ford. An "agreement" for purposes of the UCC simply refers to the "bargain of the parties" as expressed by their

MEMORANDUM OF DECISION - 10

language, or by "implication from other circumstances including course of dealing . . . or course of performance." Idaho Code § 28-1-201(3). While the October 2003 invoice did not contain language granting a security interest, at the same time the invoice was generated, Debtors helped complete and signed the Application. That Application is a writing signed by Debtors which specifically identifies the "collateral," the Ford, and instructs the State to issue a title showing Plaintiff as a "lienholder." Defendant suggests no good reason in this case why Debtors would have signed the Application identifying Plaintiff as the lienholder if they did not intend to grant a security interest in the Ford. The Court therefore concludes that the Application constituted a security agreement granting Plaintiff a security interest in the Ford. *See Roan*, 556 N.W.2d 893.

The more difficult inquiry under these facts, however, involves the extent of Plaintiff's security interest. While the terms of the credit arrangement were not contained specified in the October 2003 invoice, the May 2004 invoice contained additional evidence of those terms. The May 2004 invoice shows Debtors paid a $10,000 installment toward the purchase price of the Ford, leaving a loan balance due of $4,840. This invoice indicates that this balance was accruing 6% interest. According to the June 2004 invoice, Debtors apparently borrowed another $5,179 from Plaintiff, and the parties agreed that this amount

MEMORANDUM OF DECISION - 11

would be added to their outstanding indebtedness on the car.  However, there is no evidence in the record to show that the parties intended the vehicle to secure "future advances," that is, amounts in addition to the original price.  As a result, the Court concludes that, as of June 2004, the amount of the debt remaining due to Plaintiff secured by the Ford was $4,840.

### B.  Trustee Has Not Proven Estoppel.

Defendant contends Plaintiff should be prevented from asserting a security interest in the Ford, arguing estoppel because Plaintiff signed the vehicle title over to Defendant.  Answer at 2, Docket No. 4; Reply Brief at 3, Docket No. 11.  As the party asserting such a defense, Defendant bears the burden of proof. *Dennett v. Kuenzli*, 936 P.2d 219, 224 (Idaho Ct. App. 1997).

Estoppel encompasses two distinct legal theories, equitable estoppel and quasi estoppel.  Equitable estoppel requires proof of four elements: (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) the party asserting estoppel did not know or could not discover the truth; (3) the false representation or concealment was made with the intent that it be relied upon; and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.  *Wells v. U.S. Life Ins. Co.*, 804

MEMORANDUM OF DECISION - 12

P.2d 333, 338 (Idaho Ct. App. 1991). Quasi estoppel is a remedial doctrine designed to prevent a party from reaping an unconscionable advantage by asserting a right inconsistent with a position previously taken by him with knowledge of the facts and his rights, to the detriment of the person seeking to apply the doctrine. *Dennett*, 936 P.2d at 224; *Wells*, 804 P.2d at 338. Quasi estoppel does not require proof of a misrepresentation or reliance. *Dennett*, 936 P.2d at 225.

Defendant sent Plaintiff a letter informing him that Defendant believed his security interest in the Ford was unenforceable, and that to avoid a lawsuit over the issue, Plaintiff must sign over the title to Defendant. Ex. G, Docket No.7. After receipt of that letter, on February 2, 2005, Plaintiff endorsed the Certificate of Title in the space labeled "Signature Releasing Lien." Ex. D, Docket No. 7. Defendant relies upon these facts to establish estoppel.

At the time Defendant wrote to Plaintiff, Plaintiff's security interest was perfected. *See* Idaho Code § 49-510(1) (requiring compliance with Idaho Code § 49-504, which mandates that an application be filled out properly, before a Certificate of Title will be issued indicating perfection of a lien). Section 28-9-315(a) of the Idaho UCC provides that unless otherwise provided by the UCC, a security interest continues in collateral notwithstanding sale "unless the secured

MEMORANDUM OF DECISION - 13

party authorized the disposition free of the security interest . . . and [a] security interest attaches to any identifiable proceeds of collateral." The Bankruptcy Code allows a trustee to sell property of the estate free and clear of a lienholders' interest in such property if such interest "is in bona fide dispute." 11 U.S.C. § 363(f)(4).

Despite signing the certificate of title, Plaintiff has always maintained he held a valid security interest in the Ford. For example, after sending him the title, in response to Defendant's notice of sale concerning the vehicle, Plaintiff filed an objection indicating he intended to assert his lien in any proceeds of sale. Docket No. 16, Bankr. Case No. 04-42387. Shortly thereafter, Plaintiff filed this adversary proceeding claiming his right to the proceeds of sale in satisfaction of his security interest. Docket No. 18, Bankr. Case No. 04-42387; Docket No. 1. Although he signed the car title, Plaintiff has never expressly consented to "avoidance" of his security interest.

Arguably, Plaintiff's signature on the Ford's certificate of title was given to facilitate sale of the vehicle by Plaintiff. Under the Bankruptcy Code, Plaintiff had a right to sell the vehicle free and clear of liens without resolving the validity of Plaintiff's claim. Defendant seemed to acknowledge as much in his notice of sale, which contained the standard language that the sale would be free

MEMORANDUM OF DECISION - 14

and clear of all liens and claims, with such claims to attach to the proceeds of sale. Docket No. 13, Bankr. Case No. 04-42387.

The Court declines to find estoppel under these facts. Although Plaintiff may have signed the vehicle title releasing his lien in the vehicle itself, he never unequivocally evidenced an intent to relinquish his security interest. Section 9-315(a) of the Idaho UCC allows the secured party to authorize sale of the collateral free of the security interest, provided the security interest continues to attach to any proceeds of sale. In the absence of any express consent to the sale, the security interest would continue to attach to the vehicle itself. Thus, the act of signing the vehicle title only released the lien on the Ford, allowing Defendant to convey good title to a purchaser. There has been no showing that by signing the title Plaintiff intended to also release the security interest in the resulting proceeds.

Plaintiff objected to Defendant's sale of the vehicle, and his right to assert an interest in the proceeds was properly preserved. He then promptly filed this adversary proceeding asserting his rights. Defendant has not shown that he has in any way acted to his detriment in reliance upon Plaintiff's supposed relinquishment or waiver of his security interest in the Ford and its proceeds. To the contrary, Defendant's notice of sale indicated that, while the car itself would be sold free of liens, any security interest would attach to the sale proceeds.

MEMORANDUM OF DECISION - 15

Plaintiff is not estopped to assert his rights in the sale proceeds.

## Conclusion

Plaintiff held an enforceable security interest in the Ford securing the balance due on its purchase price. When Defendant sold the Ford, Plaintiff's interest attached to the sale proceeds. Counsel for Plaintiff may submit an appropriate form of judgment for entry by the Court. Counsel for Defendant shall approve that form of judgment.

Dated: February 10, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge